IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 08-83029-JAC11 |
| BILL HEARD ENTERPRISES, INC., ET AL., | CHAPTER 11 |
| Debtors. / | |
| SYNOVUS TRUST COMPANY, N.A., | ADVERSARY PROCEEDING NO. 09-80040-JAC |
| Plaintiff, | |
| v. | |
| BILL HEARD ENTERPRISES, INC., RICHARD M. YOUNG, PHILIP W. WRIGHT, JAMES F. JOHNSON, BOBBY D. JOHNSON, AND THE OFFICIAL CREDITORS COMMITTEE OF BILL HEARD ENTERPRISES, INC., ET AL., | |
| Defendants. / | |

**MEMORANDUM OPINION APPROVING MOTION FOR SUMMARY JUDGMENT
FILED BY THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
OF BILL HEARD ENTERPRISES, INC. *ET AL.* WITH RESPECT TO EACH OF
RICHARD M. YOUNG, PHILIP W. WRIGHT AND JAMES F. JOHNSON**

This matter having come before the Court upon a motion (the "Motion")[1] in the above-captioned adversary proceeding (the "Adversary") of the Official Committee of Unsecured Creditors (the "Committee") seeking, among other things, an order: (i) granting the Committee's Motion; (ii) determining that any assets, including but not limited to any life insurance policies and the proceeds thereof (collectively, the "Trust Funds") currently held by Synovus Trust Company, N.A. ("Synovus") as a result of the Deferred Compensation Plans entered into by each of Richard M. Young, Philip W. Wright and James F. Johnson and the

---

[1] Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the Motion.

related trust agreements constitute property of the Bill Heard Enterprises, Inc. ("BHE") chapter 11 estate; (iii) concluding that no portion of the Trust Funds is the property of Richard M. Young, Philip W. Wright or James F. Johnson; and (iv) directing that Synovus turnover the Trust Funds to the BHE estate; and this Court having considered the submissions and arguments of counsel including all briefing in the Adversary and the record from the hearing conducted on September 29, 2009; and it appearing that this Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and venue is proper in this district pursuant to 28 U.S.C. § 1409; and this is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having determined that granting the relief requested in the Motion with respect to Richard M. Young, Philip W. Wright and James F. Johnson is warranted; and it appearing that notice of the Motion has been given, and that no other or further notice need be given; and for sufficient cause shown, the Court makes the following findings of fact and conclusions of law:[2]

## BACKGROUND

1. This Adversary began on April 1, 2009, when counsel for Synovus filed a complaint in intervenor.

2. A motion was filed to dismiss the Committee from the action which motion was denied by this Court. *See* Docket No. 33.

3. Each of Richard M. Young, Philip W. Wright, James F. Johnson, BHE and the Committee filed answers which included affirmative defenses, and/or cross claims.[3]

---

[2] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. *See* FED. R. BANKR. P. 7052.

[3] Another Executive Beneficiary named in this Adversary is Bobby Johnson. Mr. Bobby Johnson is subject to a separate order of this Court granting the Committee's Motion due to his failure to oppose or otherwise respond to the Motion. [Docket No. 70].

4.  The Committee served discovery including interrogatories, requests for production of documents and requests for admissions upon each of Richard M. Young, Philip W. Wright and James F. Johnson (collectively, the "Committee Discovery Requests"). Among other things, the Committee sought facts underlying the purported affirmative defenses and cross claims raised by each of Richard M. Young, Philip W. Wright and James F. Johnson.

5.  The Committee also sought admissions on a number of factual items.

6.  Despite requests for extensions by each of Richard M. Young, Philip W. Wright and James F. Johnson to respond to the Committee Discovery Requests, which extensions were granted by the Committee, none of Richard M. Young, Philip W. Wright, or James F. Johnson served timely responses to the Committee Discovery Requests.

7.  On August 10, 2009, James F. Johnson delivered an incomplete untimely response to the Committee without first seeking leave of this Court (the "Untimely Response").

8.  On August 21, 2009, the Committee filed the Motion [Docket No. 51] which was joined by the Debtors [Docket No. 53]. Copies of the Committee Discovery Requests were included as Exhibits to the Motion.

9.  Each of Richard M. Young, Philip W. Wright and James F. Johnson filed timely oppositions to the Motion [Docket Nos. 54, 55 and 60] (collectively, the "Oppositions").

10. On September 24, 2009, the Committee timely filed its omnibus reply to the Oppositions (the "Reply") [Docket No. 64] which Reply was joined by the Debtors [Docket No. 66].

11. A hearing on the Motion was conducted on September 29, 2009 at the conclusion of which this Court granted partial summary judgment with respect to certain issues raised in the Motion, the Oppositions and the Reply, reserved its judgment on other portions of the Motion,

and directed each of the Committee, Richard M. Young, Philip W. Wright and James F. Johnson to submit proposed findings of fact and conclusions of law to the Court on or before October 26, 2009.

## FINDINGS OF FACT

1. Neither Richard M. Young nor Philip W. Wright responded to the Committee's Discovery Requests which included requests for admissions.

2. James F. Johnson served his Untimely Response to the Committee's Discovery Requests without first seeking leave of Court and accordingly the Untimely Response shall be treated as if James F. Johnson failed to respond to the Committee's Discovery Requests including the requests for admission.

3. All requests for admissions contained in the Committee Discovery Requests being deemed admitted, it is undisputed that:

   (a) The copies of the Deferred Compensation Plans and the trust agreements attached to the Complaint were true and correct copies that had not been altered, amended or otherwise modified.

   (b) The Deferred Compensation Plan was unfunded.

   (c) Each of Richard M. Young, Philip W. Wright and James F. Johnson were Key Employees and/or Executives of BHE.

   (d) The Deferred Compensation Plan was intended to supply supplemental retirement benefits for each of Richard M. Young, Philip W. Wright, and James F. Johnson.

   (e) Each of Richard M. Young, Philip W. Wright and James F. Johnson was involved in the design and operation of their respective Deferred Compensation Plans.

   (f) Each of Richard M. Young, Philip W. Wright and James F. Johnson chose the amounts to be contributed by BHE to the trust.

   (g) Richard M. Young, who had a second agreement, chose an additional amount to be deferred from his salary.

4

(h) The trust held at Synovus was unfunded.

(i) The trust held at Synovus was an irrevocable grantor trust.

(j) Establishment of the trust was not intended to affect the status of the Deferred Compensation Plan as unfunded.

(k) Trust assets were subject to the claims of BHE's general creditors in the event of "Insolvency."

(l) Insolvency was defined in all of the underlying trust agreements to include BHE being subject to a pending proceeding as a debtor under the Bankruptcy Code.

(m) None of Richard M. Young, Philip W. Wright or James F. Johnson have preferred claims or beneficial interests in the trust assets.

(n) None of Richard M. Young, Philip W. Wright or James F. Johnson have paid any taxes on amounts that were deferred.

4. The plain language of the Deferred Compensation Plan executed by each of Richard M. Young, Philip W. Wright and James F. Johnson provides that a copy of the related trust agreement is "attached hereto as Exhibit A."

5. By failing to respond to the Committee Discovery Requests, none of the Executive Beneficiaries produced any factual support for any of their asserted affirmative defenses or counter-claims.

## **CONCLUSIONS OF LAW**

**I.    The Committee Has Standing to File and Prosecute the Motion**

1. The standard for summary judgment is set forth in Rule 56 of the Federal Rules of Civil Procedure, made applicable to this Adversary by Rules 7056 and 9014 of the Federal Rules of Bankruptcy Procedure.

2. Rule 56 provides, in part, that any "party claiming relief may move, with or without supporting affidavits, for summary judgment on all or part of the claim."

3.      This Court holds that the Committee, as a party to the Adversary Proceeding, has standing to file the Motion which standing is bolstered by the joinders filed by the Debtors to each of the Motions and the Reply.  Although defendants Young and Wright initially contested the committee's standing, defendants now also concede that the Court's consideration of summary judgment is appropriate based on Debtor's joinder in the Committee's summary judgment request.

## II.     There Are No Genuine Issues of Material Fact and This Adversary Proceeding May Be Resolved by Motion for Summary Judgment

1.      Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2552, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986); *Hyman v. Nationwide Mut. Fire Ins. Co.*, 304 F.3d 1179 (11th Cir. 2002).

2.      The evidence and all factual inferences therefrom must be viewed in the light most favorable to the party opposing the motion and all reasonable doubts about the facts must be resolved in favor of the non-moving party. *Andreini & Co. v. Pony Exp. Delivery Servs., Inc. (In re Pony Exp. Delivery Servs., Inc.)*, 440 F.3d 1296, 1300 (11th Cir. 2006); *see also Loren v. Sasser*, 309 F.3d 1296, 1301-02 (11th Cir. 2002); *Hyman v. Nationwide Mut. Fire Ins. Co.*, 304 F.3d 1179 (11th Cir. 2002) (citing *Burton v. City of Belle Glade*, 178 F.3d 1175, 1187 (11th Cir. 1999)).  However, "[w]hen a motion for summary judgment has been made properly, the nonmoving party may not rely solely on the pleadings, but . . . must show that there are specific

facts demonstrating that there is a genuine issue for trial." *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). The nonmovant "'has the burden of making a showing sufficient to establish the existence of each essential element to the nonmovant's case on which he will bear the burden of proof at trial.'" *United States v. Barbara Lane*, 960 F.2d 126 (11th Cir. 1992) (citation omitted).

3. This Court may consider evidence only if the evidence can be "reduced to admissible evidence at trial" or "reduced to admissible form." *Macuba v. DeBoer*, 193 F.3d 1316, 1323 (11th Cir. 1999). *See also Wright v. Southland Corp.*, 187 F.3d 1287 (11th Cir. 1999); *McMillian v. Johnson*, 88 F.3d 1573, 1584-85 (11th Cir. 1996), *aff'd sub nom, McMillian v. Monroe Co.*, 520 U.S. 781 (1997); *Pritchard v. Southern Co. Servs.*, 92 F.3d 1130, 1135 (11th Cir. 1996).

4. The failure of each of Richard M. Young, Philip W. Wright and James F. Johnson to respond to the Committee Discovery Requests seeking information in support of their purported cross-claims and affirmative defenses enables this Court to enter summary judgment in favor of the Committee because the "the nonmoving party has failed to make a sufficient showing on an essential element of [their] case with respect to which [they have] the burden of proof." *Celotex Corporation v. Catrett*, 106 S. Ct. 2552.

5. This Court holds that none of Richard M. Young, Philip W. Wright or James F. Johnson has raised any genuine issues of material fact. As a result of the plain language of the documents, there is no genuine issue of material fact for trial and the Committee is entitled to judgment as a matter of law that the Trust Funds are the property of the BHE estate and the Executive Beneficiaries possess only general unsecured claims against the BHE estate.

### III. The Deferred Compensation Plan Is a "Top Hat" Plan

1. "A deferred compensation plan 'is an agreement by the employer to pay compensation to employees at a future date.'" *IT Group, Inc.,* 448 F.3d 661, 664 (3d Cir. 2006). In *IT Group, Inc.,* 448 F.3d 661, 664-65 (3d Cir. 2006), the Third Circuit explained that "[t]he main purpose of the plan is to defer the payment of taxes. . . . The idea is to defer the receipt of compensation until retirement or termination of employment, when the employee is in a lower tax bracket, thus reducing the overall amount of taxes paid."

2. In *Holloman v. Mail-Well Corp.,* 443 F.3d 832, 837 (11th Cir. 2006), the Eleventh Circuit explained that certain deferred compensation plans known as "top hat" plans are unfunded plans "maintained by an employer for the purpose of deferred compensation for a select group of management or highly compensated employees." Discussing top hat plans, the court wrote:

> Top hat plans are subject to ERISA, 29 U.S.C. § 1003(a), but notably, they are excluded from many individual ERISA provisions on the basic assumption that high-level employees are in a 'strong bargaining position relative to their employers and thus do not require the same substantive protections that are necessary for other employees.'[4]

3. In this case, the subject Deferred Compensation Plans were limited to a select group of management employees.

4. Pursuant to the terms of the Deferred Compensation Plan, each of Richard M. Young, Philip W. Wright and James F. Johnson agreed to postpone receipt of a certain portion of compensation until a later tax year.

---

[4] *Holloman v. Mail-Well Corp.,* 443 F.3d 832, 837 (11th Cir. 2006).

5. None of Richard M. Young, Philip W. Wright or James F. Johnson had actual or constructive receipt of the deferred amounts as evidenced by their failure to pay any taxes on the deferred amounts.

6. None of Richard M. Young, Philip W. Wright or James F. Johnson received an "economic benefit" from the deferred amounts and did not pay any taxes on any of the deferred amounts. See Martin S. Swift, Jr., Advanced Deferred Compensation Principles and techniques, Hot Issues in Executive Compensation, (PLI Tax Law & Estate Planning Handbook Series No. 502, page 963, (2001)).

7. No assets were specifically segregated to make payments to any of Richard M. Young, Philip W. Wright or James F. Johnson pursuant to their respective deferred compensation plans or trust agreements – as evidenced by the specific reference to the plan as an "unfunded arrangement." *See In re Silicon Graphic, Inc*., 363 B.R. 690, 696 (Bankr. S.D. N.Y. 2007).

8. As set forth in the trust agreement, all assets held by Synovus were subject to the claims of BHE's creditors. *See In re Silicon Graphic, Inc.*, 363 B.R. 690, 696 (Bankr. S.D. N.Y. 2007) (citing *In re IT Group, Inc.*, 448 F.3d 661, 664 (3d Cir. 2006) for the proposition that "assets used to pay the deferred compensation are the general assets of the employer and are subject to the claims of the employer's creditors").

9. No Executive Beneficiary has come forth with any law that requires funds deferred by individuals from salary as opposed to funds contributed by employers pursuant to an agreement with the employee should be treated differently and this Court has not identified any. This Court holds that the Deferred Compensation Plan of each of Richard M. Young, Philip W. Wright and James F. Johnson was a "top hat" plan. As a "top hat" plan, the Deferred

9

US2008 932010.1

Compensation Plans are subject to certain ERISA requirements but are exempted from nearly all substantive requirements such as minimum funding, vesting standards and other content requirements. *See In re Silicon Graphic, Inc.,* 363 B.R. 690, 695 (Bankr. S.D.N.Y. 2007).

## IV. The Trust Maintained by Synovus is a "Rabbi Trust"

1. A top hat plan is "unfunded" when, [t]he employer promises to pay the employee the deferred compensation at a specified time, but does not set the funds in an escrow, trust fund, or otherwise. The assets used to pay the deferred compensation are the general assets of the employer and are subject to the claims of the employer's creditors." *IT Group, Inc.,* 448 F.3d 661, 665 (3d Cir. 2006). In *IT Group, Inc.,* the Third Circuit explained that the employee is not subject to tax on the deferred compensation "until he or she actually receives the deferred amount because 'the employee many never receive the money if the company becomes insolvent."[5] A rabbi trust, "an irrevocable trust for deferred compensation," is one mechanism commonly used to set aside deferred compensation amounts without jeopardizing the "unfunded status" of a top hat plan.[6] Funds held in a rabbi trust "are out of reach of the employer, but are subject to the claims of the employer's creditors in the event of bankruptcy or insolvency."[7]

2. The trust agreements entered in conjunction with the Deferred Compensation Plans each provided that the Executive Beneficiaries "and their beneficiaries shall have no preferred claim on, or any beneficial ownership in, any assets of the Trust." Furthermore, they provide that "[A]ny rights created under the Plan and this Trust Agreement shall be mere unsecured contractual rights of Plan Participants and their beneficiaries against company. ***Any***

---

[5] *IT Group, Inc.,* 448 F.3d 661, 665 (3d Cir. 2006).
[6] *Id.*
[7] *Id.*

10

US2008 932010.1

***assets held by the trust will be subject to the claims of [BHE's] general creditors under federal and state law in the Event of Insolvency.***" See Motion Exhibit 4 – Trust Agreement for Philip W. Wright at 1.4 (similar language exists in the trust agreement for each of the other Executive Beneficiaries who are subject to this Order)(emphasis added).

3. None of the Executive Beneficiaries paid taxes on the deferred amounts held by Synovus. BHE remained the owner of the funds and liable for any taxes due on earnings.

4. Because the trust funds were subject to the claims of BHE's creditors in the event of BHE's Insolvency, the underlying trust is deemed to be a rabbi trust. *See In re IT Group,* 448 F.3d 661, 665 (3d Cir. 2006) (concluding that through a rabbi trust "funds held by the trust are out of the reach of the employer but are subject to the claims of the employer's creditors in the event of bankruptcy or insolvency . . . the employee is not taxed until receipt of benefits as long as the trust funds are subject to the claims of the employer's creditors. The employer is treated as the owner of the funds and taxed on all fund earnings until the date of distribution.").

5. The reference to "Insolvency" in the trust agreement for each Executive Beneficiary underscores that the trust is a rabbi trust. In the event of a change in control of BHE, the assets in the trust are segregated from BHE's other assets and can be used only to pay the deferred compensation. However, by making the assets subject to the claims of the employer's creditors in the event of bankruptcy or insolvency, the trust has the character of a rabbi trust. The reference to "insolvency" in the trust agreement does not exclude the assets from the BHE estate. *See In re IT Group*, 448 F.3d 661, 665 (3d Cir. 2006) (citation omitted) ("Funds held by the trust are out of reach of the employer but are subject to the claims of the employer's creditors in the event of bankruptcy or insolvency. The rabbi trust gives employees some measure of security, while at the same time deferring taxes. The assets set aside in the trust are segregated

11

US2008 932010.1

from the employer's other assets and can be used only to pay the deferred compensation. If there is a change in control of the company, the new owners cannot take back the assets of the trust.").

6. Counsel for Young counters that once the defendant directed his "personal funds" to the trust, a fact question remains as to whether that portion of Young's Deferred Compensation Plan became irrevocably funded and by definition could not be a "rabbit trust." Young had two separate Deferred Compensation Plans: (1) an individualized plan under which Young deferred $226,428.00 of compensation for the 1996 calendar tax year which had a value of $363,931.00 as of December 31, 2008; and (2) a plan under which BHE made contributions which had a value of $1,021,822.00 as of December 31, 2008.

7. With respect to Wright's Deferred Compensation Plan, BHE funded a split dollar life insurance policy in the face amount of $1.5 million which had a cash surrender value of approximately $274,189.00 as of December 31, 2008. The policy lists Wright as the insured, and Synovus as the owner and beneficiary of same. In considering the impact of a funded life insurance policy, Wright contends that the Third Circuit has noted that:

> [i]n considering weather a death benefit plan supported by a life insurance policy was subject to ERISA's substantive requirements, [the Eighth Circuit] stated that 'funding implies the existence of a res separate from the ordinary assets of the corporation.' *Dependahl v. Falstaff Brewing Corp.,* 653 F.2d 1208, 1214 (8th Cir. 1981). The plan was "funded because the insurance policy provided "a res separate from the corporation" to which beneficiaries could look for payment of benefits under the plan.[8]

8. The Court holds that the trust maintained at Synovus is a rabbi trust and all assets contained therein – no matter the nature or character of those assets, including but not limited to cash, securities, and insurance policies – are all property of the BHE estate. The plans

---

8  *IT Group, Inc.,* 448 F.3d 661, 667 (3d Cir. 2006).

US2008 932010.1

unequivocally provided that "*[a]ny assets held by the trust will be subject to the claims of [BHE's] general creditors under federal and state law in the Event of Insolvency*" regardless of the nature or the character of those assets. See Motion Exhibit 4 – Trust Agreement for Philip W. Wright at 1.4 (similar language exists in the trust agreement for each of the other Executive Beneficiaries who are subject to this Order)(emphasis added).

9. In *In re IT Group*, 448 F.3d 661, 667 (3d Cir. 2006), the Third Circuit explained that courts which have addressed the issue of whether a plan qualifies for the top hat exemption from ERISA's substantive provisions have focused primarily on "whether the corporation has set aside funds, separate from its general assets, for payment of plan benefits and whether the beneficiaries have a legal right greater than that of a general unsecured creditor to the corporations assets." The Second Circuit has adopted another test first articulated in *Miller v. Heller*, 915 F. Supp. 651 (S.D.N.Y. 1996) which provides that,

> the question a court must ask in determining whether a plan is unfunded is: " can the beneficiary establish, through the **plan documents**, a legal right any greater than that of an unsecured creditor to a specific set of funds from which the employer is, under the terms of the plan, obligated to pay the deferred compensation?"[9]

Using this test, the Second Circuit found that a deferred compensation plan that was financed using a life insurance policy, the proceeds of which were kept in a separate account, was unfunded.[10] As the Third Circuit noted in *IT Group*, the terms of the plan in the Second Circuit case "did not 'give plaintiffs a greater legal right to the funds in the Deferred Compensation Liability Account than that possessed by an unsecured creditor. Although the

---

[9] *Id*. at 668 *(*quoting *Demery v. Extebank Deferred Compensation Plan,* 216 F.3d 283, 287 (2d Cir. 2000)) (emphasis added).
[10] *Id.*

account was separate, it was part of the 'general assets' of the corporation, and the plan was therefore 'unfunded as a matter of law.'"[11]

The Third Circuit also noted in *IT Group* that the Fifth Circuit has employed a similar analysis which emphasized the tax consequences of the plan under which "a 'plan is more likely than not to be regarded as unfunded if the beneficiaries under the plan do not incur tax liability during the year that the contributions to the plan are made."[12] In the Fifth Circuit case, the plan participants did not treat the company's contributions to the plan on their behalf through the purchase of life insurance contracts as taxable income. Thus, the plan was considered unfunded.[13] The Third Circuit further explained that "deferred compensation is not taxable as current income only where the future payment of the compensation is somehow uncertain, i.e., where the assets used to pay participants' claims are also subject to other creditors' claims. Thus, the fact that a plan qualifies for deferred tax treatment strongly supports the conclusion that it was unfunded."[14] In *IT Group,* the Third Circuit concluded that the plan was an unfunded "top hat" plan where the plan in express not uncertain terms provided IT's intent to create an unfunded plan and pursuant to the terms of the plan documents the participants' legal rights to any plan assets were no greater than those of the corporation's general, unsecured creditors.

10. Like the plans at issue in *IT Group*, *Demery* and *Reliable Home Health Care*, the plan documents at issue in this case clearly expressed BHE's intent to create an unfunded plan and unequivocally provided that any rights created under the plan and the trust agreements were "mere unsecured contractual rights of Plan Participants" and "[a]ny assets held by the trust will be subject to the claims of [BHE's] general creditors under federal and state law in the Event of

---

[11] *Id..*
[12] *Id.(quoting Reliable Home Health Care, Inc. v. Union Central Ins. Co.*, 295 F.3d 505 (5th Cir. 2002)).
[13] *Id.* at 668-669.
[14] *Id.* at 669.

14

US2008 932010.1

Insolvency." Further, it is uncontested that none of the defendants paid taxes on the deferred compensation under the subject plans. Accordingly, the Court finds that the trust maintained at Synovus is a rabbi trust and all assets contained therein – no matter the nature or character of those assets, including but not limited to cash, securities, and insurance policies – are all property of the BHE estate.

**V.   Section 541(b)(7) Does Not Apply to the Funds Deferred by the Executive Beneficiaries**

1. Section 541(b)(7) of the Bankruptcy Code – introduced as part of the 2005 amendments – provides, in part, that property of the estate does not include any amount <u>withheld by an employer</u> from the wages of employees for payment as contributions to an employee benefit plan that is subject to title I of the Employee Retirement Income Security Act of 1974 or <u>received by an employer from employees</u> for payment as contributions to an employee benefit plan that is subject to title I of the Employee Retirement Income Security Act of 1974. 11 U.S.C. § 541(b)(7)((A) and (B)(emphasis added).

2. Income is "withheld" when an employee has a present entitlement to the income, but for some reason the employer declines to give it to the employee. *See Chao v. Lexington Healthcare Group, Inc. (In re Lexington Healthcare Group, Inc.)*, 335 B.R. 570, 576 (Bankr. D. Del. 2005) (citations omitted). No portion of the trust assets were ever withheld from Richard M. Young, Philip W. Wright or James F. Johnson.

3. Each of Richard M. Young, Philip W. Wright and James F. Johnson deferred funds pursuant to the terms of their respective Deferred Compensation Plans. As a result, they had no present entitlement to the income and accordingly the funds contributed to the trust and

15

held by Synovus were neither "withheld by" BHE nor "received from" any of the Executive Beneficiaries. This Court holds that a deferral of income is neither a withholding by an employer nor an amount received by an employer from employees. *See Schroeder v. New Century Holdings, Inc. (In re New Century Holdings, Inc.)*, 387 B.R. 95, 114 (Bankr. D. Del. 2008) ("An annual deferral of income strikes this court as potentially very different form a 'withholding' or an 'amount received by an employer from employees.' The latter two categories imply that the employee possessed the income at some point whereas a deferral of income implies that the employee agreed to receive the income at a later date and never actually possessed it.").[15]

4. Counsel for Young argues that the funds "self contributed" by Young, i.e the funds which had a value of $363,931.00 as of December 31, 2008, are not property of the estate pursuant to newly enacted § 541(b)(7). Young suggests that there is insufficient evidence to determine the intent of the parties at the time Young deferred the compensation.

5. Defendant, James Johnson, also contends that a genuine issue of fact exists with regard to whether funds contributed by the debtor to purchase two life insurance policies are excluded from property of the estate under § 541(b)(7). Johnson and BHE entered into a Deferred Compensation Plan on February 1, 1999 pursuant to which Johnson voluntarily agreed to defer yearly bonuses. Thereafter, the debtor began contributing funds to procure two life insurance policies insuring Johnson's life. As of January 23, 2009, the combined cash value of the policies was $295,742.00.

---

[15] This Court finds additional indirect support for the position that the deferred amounts are not property of the Executive Beneficiaries in *In re Silicon Graphic, Inc.,* 363 B.R. 690 (Bankr. S.D.N.Y. 2007). *Silicon Graphic* arose post-BAPCPA and no party or the Court argued that the trust funds were excluded from the bankruptcy estate pursuant to 11 U.S.C. § 541(b)(7).

16

US2008 932010.1

6. This Court's analysis does not change whether the amounts were deferred by the employee from the defendants' salary or were in the form of employer contributions otherwise deferred by the employee. The only court to address plans similar to those before this Court was the court in *In re New Century Holdings, Inc.*, 387 B.R. 95 (Bankr. D. Del. 2008). In that case, the plaintiffs alleged that amounts were "withheld" from the "wage, bonuses, and salaries of Beneficiaries . . . ."[16] The plan provided, however, that the participants agreed to defer compensation which meant under the terms of the plan that the participants had agreed to make an "annual irrevocable election to defer receipt until" a later specified date.[17] On motion to dismiss, the court stated that "[a]n annual deferral of income strikes this Court as potentially very different from a 'withholding' or an 'amount received by an employer from employees.'"[18] The court explained that, "[t]he latter two categories imply that the employee possessed the income at some point, whereas a deferral of income implies that the employee agreed to receive the income at a later date and never actually possessed it."[19]

Under similar circumstances, this Court finds that the defendants were aware of the risk involved in deferring compensation under these top hat plans which "are excluded from many individual ERISA provisions on the basic assumption that high-level employees are in a 'strong bargaining position relative to their employers and thus do not require the same substantive protections that are necessary for other employees."[20] Pursuant to the terms of the Deferred Compensation Plan, each of Richard M. Young, Philip W. Wright and James F. Johnson agreed to postpone receipt of a certain portion of compensation until a later tax year and under the terms of the plan it was clear that these key employees might never receive the money if BHE became

---

[16] *In re New Century Holdings, Inc.*, 387 B.R. 95, 114 (Bankr. D. Del. 2008).
[17] *Id.*
[18] *Id.*
[19] *Id.*
[20] *Holloman v. Mail-Well Corp.*, 443 F.3d 832, 837 (11th Cir. 2006).

17

US2008 932010.1

Case 09-80040-JAC Doc 72 Filed 11/10/09 Entered 11/10/09 10:17:48 Desc Main
Document Page 17 of 20

insolvent. Unlike participants involved in traditional ERISA qualified plans, these key executives assumed the risks involved in deferring compensation under plans which expressly provided that "[a]ny assets held by the trust will be subject to the claims of [BHE's] general creditors under federal and state law in the Event of Insolvency." Under these circumstances, the Court finds that the defendants never actually possessed the income deferred under these top hat plans and, therefore, the funds are not excluded from property of the estate under § 541(b)(7) as "any amount - withheld by an employer from the wages of employees," or "received by an employer from employees for payment as contributions" to an ERISA qualified plan.

## VI. The Trust Agreement Was Incorporated By Reference Into the Deferred Compensation Plan

1. Mr. James F. Johnson does not dispute having signed the Deferred Compensation Plan. His plan (similar to the plan of each of the other Executive Beneficiaries) contained language that "All funds so deposited to the trust shall be invested by the Trustee in accordance with the further terms of such trust  A copy of said trust is attached hereto as Exhibit A." Each Deferred Compensation Plan, including the plan executed by Mr. James F. Johnson, provides that Georgia law controlled.

2. Because the trust agreement was explicitly referred to in the Deferred Compensation Plan, the entire trust agreement, including all terms contained therein, is incorporated into the Deferred Compensation Plan. *See JTL Consulting, LLC v. Mendenhall*, No. 1:04 CV 3405 JOF, 2007 WL 901374, at *6 (N.D. Ga. Mar. 21, 2007) (citation omitted) (holding that under Georgia law "a written and filed agreement may [ ] incorporate by reference other documents by specific reference . . . .").

18

US2008 932010.1

Case 09-80040-JAC    Doc 72    Filed 11/10/09    Entered 11/10/09 10:17:48    Desc Main
Document      Page 18 of 20

3. Mr. James F. Johnson has not come forth with any evidence to excuse his reading of the trust agreement such as: (i) illiteracy; (ii) emergency; or (iii) fraud by BHE and accordingly he is bound by the terms of the trust agreement. *Charles S. Martin Distributing Co., Inc., v. Bernhardt Furniture Co.*, 445 S.E.2d 297, 299 (Ga. App. 1994) (concluding that documents that are incorporated by reference will be read together absent a legal excuse such as illiteracy, emergency or fraud).

4. This Court holds that the trust agreements were incorporated into and made a part of the corresponding Deferred Compensation Plan for each of Richard M. Young, Philip W. Wright and James F. Johnson and that each of these Executive Beneficiaries are bound by the terms of both documents.

## VII. Balancing of the Equities is Not a Part of Contract Interpretation

1. The instant Adversary is strictly a matter of contract interpretation.

2. Each of Richard M. Young, Philip W. Wright and James F. Johnson have requested that this Court make an equitable determination with respect to their individual Deferred Compensation Plans. While the Court is certainly sympathetic to the unfortunate situation these key executives now find themselves and does recognize the contributions Young and Wright have provided the debtor post-petition in the liquidation and disposition of the debtors assets, none of the executives has, however, produced any law that allows this Court to use equitable considerations in resolving matters of contract interpretation. Although this Court is one of equity, this Court is bound by the express terms of the Deferred Compensation Plans

19

US2008 932010.1

and the trust agreements in determining ownership of the Trust Funds. This Court holds that no equitable allowance may be made.

**DONE and ORDERED** this date: November 10, 2009.

/s/   Jack Caddell  
Jack Caddell  
United States Bankruptcy Judge